UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUAN D. VEGA, JR.,

                  Plaintiff,

     v.

UNITED STATES OF AMERICA, et al.,

                  Defendants.

Case No. C11-632-RSM

ORDER ON MOTIONS

## I. INTRODUCTION

Plaintiff Juan D. Vega, Jr., proceeding *pro se¸* brings this action against the United States of America; Pioneer Human Services ("Pioneer") – a private corporation that owns and manages a residential re-entry center in Seattle Washington called the Pioneer Fellowship House; and several individuals employed by each of these defendants.  Plaintiff asserts fifteen causes of

action arising out of his removal from the Pioneer Fellowship House and placement back in federal detention. Before the Court are motions to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) filed by the government and its employees (the "government defendants") (Dkt. No. 29) and Pioneer and its employees (the "Pioneer defendants") (Dkt. No. 9). For the reasons set forth below, the motions to dismiss are GRANTED in part and DENIED in part.

## II. BACKGROUND[1]

Plaintiff arrived at the Pioneer Fellowship House Residential Reentry Center (hereinafter "PFH") in August 2008. Upon arrival, Plaintiff met with Pioneer employee Counselor Bernadette Mathis. Plaintiff informed Ms. Mathis that while he was incarcerated at the federal detention center in Sheridan, Oregon, he had been medically unassigned and not required to work at any type of job. He also informed Ms. Mathis that he had filed a motion with the U.S. District Court for the Western District of Washington for a waiver from work and subsistence payments during his time at PFH. (The motion was subsequently denied.) Finally, he told Ms. Mathis that there were five active court proceedings in various jurisdictions in which he was representing himself in a *pro se* capacity. Ms. Mathis told Plaintiff that, pursuant to Pioneer policy, Plaintiff would not be permitted to go to any library during his stay at PFH and any "Authorized Absence" requests to visit law libraries would be denied. Following this

---

[1] For the purposes of these motions, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

ORDER ON MOTIONS - 2

conversation, Plaintiff filed letters and motions for continuances in his various court cases, explaining that he was being denied access to legal materials.

According to Plaintiff, on September 3, 2009, Ms. Mathis prepared a document entitled "Individual Program Plan/Goals" related to Plaintiff's stay at PFH. In this document, Ms. Mathis noted that Plaintiff was working on obtaining a medical waiver through the Veterans Administration, that he had been informed that he needed to see a doctor to justify his claim, and that he told her he had been exempt from work during his time at Sheridan Federal Detention Center. On September 17, 2008, Ms. Mathis prepared a Resident Case Note in which she documented that Plaintiff had secured employment with Pioneer Food Services and that he was to commence employment on September 20, 2008. Ms. Mathis asked Plaintiff to sign the case note document and Plaintiff refused.

On September 23, 2008, Plaintiff received the results from a physical examination. Plaintiff presented the results to Ms. Mathis. At this time, Plaintiff also told Ms. Mathis that he wanted to continue working because he liked and enjoyed his job.

On September 25, 2008, Ms. Mathis met with Plaintiff and two other PFH staff program managers. Ms. Mathis told Plaintiff that the other program monitors were witnesses and if Plaintiff did not sign the case note document that he had previously refused to sign, she would "write him up for failure to program." Dkt. No. 24, ¶ 35. Plaintiff signed the document at that time, but wrote the words "under duress," following his signature. After signing the document, Plaintiff prepared two PFH "Requests to Staff," also known as "KITES". The first KITE was sent to Ms. Mathis and requested a copy of the rule or procedure that required Plaintiff to sign case note documents. The second KITE was sent to the Director of PFH, Heather McIntyre,

ORDER ON MOTIONS - 3

requesting a copy of the Federal Bureau of Prisons ("BOP") Form BP-9. Plaintiff explains that a Form BP-9 is the form used by federal inmates to file administrative complaints.

The following day, Plaintiff was summoned from work for a conference call with Ms. Mathis, Federal BOP Community Corrections Office manager William Brown, Jr., and PFH director Heather McIntyre. Plaintiff was told that the purpose of the meeting was to discuss Plaintiff's "refusal to program" at PFH by signing the case note document with the words "under duress." Mr. Brown told Plaintiff during this meeting that he needed to follow the rules and "program."

Between September 25, 2008, and October 16, 2008, Plaintiff lived at PFH without incident. During this time, Plaintiff received a "Level Advancement" for complying with work requirements, paying subsistence, participating in drug abuse treatment, and being free of any incident write ups. However, on October 16, 2008, a meeting purportedly took place between Heather McIntyre (Director of PFH), Bernadette Mathis (counselor at PFH), William Brown Jr., (BOP employee and manager of Community Corrections), Kevin Straight (BOP employee) and Arinda Phillips (BOP employee).[2] According to Plaintiff, "the aforementioned Defendants, were determined[d] to make an example out of Plaintiff, who is a black male, for his continuous legal actions against the [Federal BOP's Community Corrections Office] … and [PFH] …by any

---

[2] Mr. Vega named Oranda Phillips and William Brown as Defendants in this action. It is the government's understanding that Mr. Vega intended to name Arinda Phillips, a BOP employee working with Residential Reentry Centers. Furthermore, Mr. Brown goes by William Brown, Jr.

means… At that meeting, the Defendants designed a plan for Plaintiff's removal by writing up a false Incident Report." Dkt. No. 24, ¶¶ 41-42. The report stated:

> Resident Juan Vega arrived at PFH/RRC on 08/20/08. Upon his arrival, resident Vega told his counselor, B. Mathis that he was unwilling to obtain employment due to his medical issues. However, Resident Vega was unable to supply sufficient documentation from any medical professional stating that he was disabled and unable to work. Community Corrections Staff instructed counselor, B. Mathis that Resident Vega needed to obtain employment, follow house rules, pay subsistence, and be appropriately programming. On 09/17/08, his counselor B. Mathis attempted to meet with resident Vega to review and sign his case note. Resident Vega stated he would not sign the case note until a visitor was approved. A second attempt was made and Resident Vega signed his case note but placed "under duress" next to his signature. Resident Vega spoke to CCM, William Brown on 09/25/08 via telephone regarding his refusal to program at PFH/RRC. Mr. Brown told Resident Vega that he needed to follow the rules, and work with his counselor to complete necessary programming. Mr. Brown stated that there would be should be [sic] no more problems with resident Vega while at the RRC. On 10/16/08 at 1000, Staff became aware that Resident Vega has been pursuing an active case with the Department of Labor and Industries and is scheduled to go to trial this Friday, October 17, 2008.

Dkt. # 31, Ex. A.

Plaintiff alleges that Ms. Mathis knew well in advance of October 16, 2008 that Plaintiff had an upcoming trial date. He also alleges that "Defendants knowingly, intentionally and with actual malice, [chose] Plaintiff, who is a black male from over 200,000 plus inmates in the Federal BOP system, as the only inmate that is required to seek their permission before accessing a court by written correspondence." *Id.* at ¶44. In addition, Plaintiff claims that many of the statements made in the incident report, including the contention that he refused to sign the case note until a visitor was approved, were false.

ORDER ON MOTIONS - 5

On October 17, 2008, two U.S. Marshalls transferred Plaintiff in handcuffs from PFH to the Federal Detention Center – SeaTac in SeaTac, Washington, pending a hearing on the violation. On October 23, 2008, Donald Jackson, the PFH Home Confinement Coordinator/Center Discipline Committee Chairperson for the Federal BOP, issued "Findings of the Committee" regarding Plaintiff's violation. Mr. Jackson concluded that "the act was committed as charged." In the section of the hearing report entitled "Specific evidence relied on to support findings," Mr. Jackson wrote,

> I find that you committed the prohibited act of Violating [sic] a condition of community program (Code 309). My findings is [sic] based on the written account of the reporting staff member, which indicates on October 16, 2008 at 1030 hrs. Pioneer Fellowship House staff became aware that you were pursuing an active case with the Department of Labor and Industries without permission from Pioneer Fellowship House Staff. I also considered your statement that you did not know what you did. Ignorant [sic] of rules and regulations dose [sic] not constitute a legitimate excuse for violating rules and regulations.

Dkt. No. 24, ¶59. Mr. Jackson purportedly recommended that Plaintiff be terminated "to impress upon you and other residents that this kind of behavior will not be tolerated and that they will be held accountable when they violate Federal BOP and PFH/RRC rules and regulations." *Id.*

Although the above committee report was generated, a hearing regarding Plaintiff's violation was never held. According to Plaintiff's compliant, Mr. Jackson noticed that the "Investigation Report" issued by PFH counselors was incomplete. Specifically, the sections entitled "Other Facts About the Incident," "Statements of Those Persons Present at Scene," and "Disposition of Evidence" had been left blank. Therefore, Mr. Jackson decided to terminate the

ORDER ON MOTIONS - 6

hearing until he was able to secure more evidence about the alleged violation.  Ultimately, Plaintiff was reinstated at PFH on January 15, 2009.

Mr. Vega brings fifteen claims against the Defendants for their actions in the above-recited events.  Defendants seek to dismiss the action in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## III. DISCUSSION

### A.  Motion for Service by U.S. Marshals

As a preliminary matter, the Court notes that Plaintiff has an outstanding motion for the Court to order the U.S. Marshals Service to serve summons and his complaint on the government defendants.  In its Motion to Dismiss, the government defendants indicate that they now waive service of the individual employees.  Accordingly, Plaintiff's motion (Dkt. No. 20) is MOOT.

### B.  Short and Plain Statement Requirement Under Fed. R. Civ. P. 8(a)

Both parties move to dismiss Plaintiff's complaint on the basis that it fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure, requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Under Rule 8(a) "each averment of a pleading shall be simple, concise, and direct."  The Ninth Circuit has repeatedly upheld district court dismissals based on plaintiffs' failures to comply with the Rule 8 requirements.  *See, e.g., Agnew v. Moody,* 330 F.2d 868, 869 (9th Cir. 1964); *Schmidt v. Herrmann,* 614 F.2d 1221, 1224 (9th Cir.1980); *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir. 1965).  However, "a dismissal for a violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.' " *Gillibeau v. City of Richmond,* 417 F.2d 426, 431 (9th Cir.1969) (quoting

*Corcoran,* 347 F.2d at 223). Further, because dismissal with prejudice is a harsh remedy, district courts are advised to "first consider less drastic alternatives." *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996).

Here, the operative complaint is 56 pages long. *See* Dkt. No. 24. Plaintiff's original complaint had been 98 pages long. *See* Dkt. No. 1. While Plaintiff's complaint is lengthy, the Court will not dismiss the complaint on this basis alone. *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131 (9th Cir. 2008) ("*Agnew* has never been cited by this court as standing for the proposition that a complaint may be found to be in violation of Rule 8(a) solely based on excessive length, nor does any other Ninth Circuit case contain such a holding."). Moreover, as in *Hearns,* the Court finds:

> [The] complaint is logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor. The [first amended complaint] and the original complaint contain excessive detail, but are intelligible and clearly delineate the claims and the Defendants against whom the claims are made… Here, the Defendants should have no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss.

*Id.* at 1132. Accordingly, Plaintiff's complaint does not violate Rule 8(a). Defendants' motion to dismiss on this basis is DENIED.

## C.   Failure to Comply with Local Rules

Plaintiff's response to the Pioneer Defendants' Motion to Dismiss (Dkt. No. 14) is 33 pages long. Pursuant to this Court's local rules, briefs in opposition to motions to dismiss shall not exceed 24 pages. Local Rule CR 7(e)(3). Although courts liberally construe pleadings of *pro se* litigants, see *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), and seek to avoid

denying *pro se* litigants a hearing on the merits due to ignorance of procedural technicalities, *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), "[p]ro se litigants must follow the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Additionally, the Court cannot and will not act as a party's lawyer, even for *pro se* litigants. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). Plaintiff's failure to comply with court rules in any respect going forward in this matter will result in sanctions. Specifically, should Plaintiff fail to comply with page limits in any future filing in this matter, the Court will disregard any pages in excess of the page limit.

## D.   Plaintiff's Constitutional Claims

The Defendants seek to dismiss several of Plaintiffs claims under Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. 556). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

1. <u>Section 1985 Claims</u>

Counts 1 and 3 of Plaintiffs' complaint are claims for "conspiring to violate constitutional rights" and "conspiring to violate civil rights" and refer to 42 U.S.C. § 1985 (3). To state a claim under 42 U.S.C. § 1985 for a conspiracy to violate civil rights, a plaintiff must plead four elements: "(1) conspiracy; (2) for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of laws or of equal privileges and immunities under laws; and (3) act in furtherance of that conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of citizen of United States." *Keenan v. Allan*, 889 F.Supp. 1320, 1364 (E.D. Wash. 1995) (citing *Carpenters v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). The second element is two-pronged: a plaintiff must identify a legally protected right and "demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'." *Id.* (citing *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir.1992) and *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)).

Here, Plaintiff has failed to plead any factual allegations that would support his conclusion that the actions of the defendants were motivated by racial animus. Plaintiff concludes that Defendants were determined to make an example of him because he is black. However, there is no factual content in the complaint that permits the Court to draw this inference. Plaintiff does not allege that any comment regarding race was ever made to him or about him; he does not allege that other non-black detainees were treated differently; he does not allege any pattern of racially motivated behavior on the part of any defendant. There is simply no factual allegation – other than the allegation that Plaintiff is himself black – that would

support the inference that the defendant's actions were motivated by racial animus. *See Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) ("We conclude that the district court properly dismissed Jones' section 1983 claim. His allegations are conclusional and unsupported by any facts as to how race entered into any decisions.").

The Court dismisses Plaintiff's Section 1985 for the additional reason that Section 1985 is a statutory remedy available to Plaintiffs' whose civil rights were violated by defendants acting under color of *state* law. *See* 42 U.S.C. § 1985. *Cf. Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir.1991) ("Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens."). Plaintiff has not named any state actors in this lawsuit, nor has he alleged that any federal actors were operating under color of state law. Accordingly, Plaintiffs' § 1985 claims are hereby dismissed.

2. <u>Bivens Claims</u>

Counts 1 through 4 of Plaintiff's complaint are best interpreted as claims arising under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971) because all of the Defendants are either federal BOP personnel or staff of Pioneer Human Services, under contract with the federal government. *Bivens* "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 66 (2001). In doing so, the Supreme Court held that "a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." *Id.* Subsequently, the Supreme Court recognized the existence of an additional implied damages remedy for violations of the Due

Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the

Eighth Amendment by federal officers. *Id.* at 67; *see also Davis v. Passman,* 442 U.S. 228, 99

S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d

15 (1980). However, since *Carlson,* the Supreme Court has "consistently refused to extend

*Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68.

In *FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme

Court "unanimously declined an invitation to extend *Bivens* to permit suit against a federal

agency," reasoning that "'the purpose of *Bivens* is to deter *the officer,*' not the agency." *Malesko,*

534 U.S. at 69 (quoting *Meyer,* 510 U.S. at 485) (emphasis in original). Employing the same

reasoning, the Supreme Court in *Malesko* further declined to extend *Bivens* liability to a private

corporation which had contracted with the Federal BOP to operate a community correctional

facility that housed federal inmates. *Id.* at 63, 70-74. The Supreme Court has yet to specifically

address the question of whether or not individual employees of a private entity contracting with

the federal government are themselves subject to *Bivens* liability. However, in the Ninth Circuit,

employees of a private corporation operating a prison under contract with the federal government

may be subject to *Bivens* liability. *See Pollard v. Geo Group*, *Inc.*, 607 F.3d 583, 588 (9th Cir.

2010).

Since Pioneer Human Services is a private corporation operating a halfway house for

federal inmates, Pioneer Human Services is not liable under *Bivens* to Plaintiff for alleged

constitutional violations. *Malesko,* 534 U.S. at 63, 70-74. The purpose of liability under *Bivens*

is to deter the individual officer, not the corporation that employs him or her. *Id.* at 69.

However, as explained above, in the Ninth Circuit, *employees* of private entities operating under

color of federal law may be liable under *Bivens*. *Pollard,* 607 F.3d at 588; *Schowengerdt v. Gen. Dynamics Corp.,* 823 F.2d 1328, 1337-38 (9th Cir.1987). Because it has not been briefed, the Court declines to determine at this juncture whether the Pioneer employees acted under color of federal law for the purpose of *Bivens* liability. However, the Pioneer employees' motion to dismiss Plaintiff's *Bivens* claims on the sole basis that they are not federal employees is hereby DENIED under *Pollard.*

The federal employees in this action, William Brown, Jr., Kevin Straight and Arinda Phillips, seek to dismiss Plaintiff's *Bivens* claims on the basis that they do not allege that any of the individual BOP employees personally caused a deprivation of Plaintiff's constitutional rights. The Court disagrees. Plaintiff's complaint contains sufficient allegations to raise a reasonable inference that the defendant government employees engaged in conduct that impinged on Plaintiff's right of access to the Courts when Plaintiff was transferred out of the PFH for pursuing his claim against the Department of Labor and Industries. Presumably, PFH employees do not have the authority to determine whether an inmate is entitled to remain at PFH or to summon the U.S. Marshalls to remove an inmate from PFH. Accordingly, if Plaintiffs allegations are to be taken as true, one or all of the federal BOP employees involved authorized Plaintiff's termination from PFH on the basis of allegations that Plaintiff was pursuing a lawsuit against the Department of Labor and Industries. The government's motion to dismiss the *Bivens* claims against it and its employees on the basis that no government employee was involved in the alleged deprivation of constitutional rights is DENIED.

ORDER ON MOTIONS - 13

**E.    Plaintiff's State Law Claims**

1.    <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Jurisdiction is  a threshold issue that must be addressed before considering the merits of a cause of action.  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-96 (1998); *Retail Flooring Dealers of Am., Inc., v. Beaulieu of Am., LLC,* 339 F.3d 1146, 1148 (9th Cir. 2003). The burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  If the Court finds that it lacks subject matter jurisdiction, then it "must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Plaintiff brings this action against the United States government and three of its employees.  "The United States, as sovereign, is immune from suit save as it consents to be sued...." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted). Waivers of the government's sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4 (1969). The Federal Tort Claims Act is one such unequivocal waiver. *See* 28 U.S.C. §§ 1346, 2671–2680 (2008). The act grants federal courts subject-matter jurisdiction over suits based upon the negligent or wrongful act or omission of a government employee. 28 U.S.C. § 1346(b). The statute defines employee, in pertinent part, as any "person acting on behalf of a federal agency in an official capacity." *Id.* § 2671. This

definition, however, is expressly qualified and "does not include any contractor with the United States." *Id.*

Pioneer Human Services maintains a private corrections contract with the federal BOP. Dkt. No. 9, p. 4. As such, it fits squarely within the "contractors" exception of the FCPA. Plaintiff suggests that Pioneer should nonetheless be considered a government employee. A contractor may be considered a government employee within the meaning of the FTCA if the government has the power under the contract to supervise the contractor's day-to-day operations and to control the detailed physical performance of the contract. *See U. S. v. Orleans*, 425 U.S. 807, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976). However, Plaintiff has not pled any facts nor is there any document in the record that would support such an inference. Further, any waiver of immunity must be strictly construed in favor of the United States. *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 33-34 (1992); *Jerves v. U.S.*, 966 F.2d 517, 521 (9th Cir. 1992). Accordingly, because the waiver of sovereign immunity under the FTCA does not apply to government contractors and Pioneer Human Services is a government contractor, the United States is not liable under the FTCA for the acts or omissions of Pioneer employees. The government's motion to dismiss Plaintiff's FTCA claims *to the extent that they are predicated on the conduct of Pioneer and its employees* is hereby GRANTED. However, pursuant to the same analysis, the Court has jurisdiction to hear Plaintiff's tort claims under the FTCA to the extent that they are predicated on the conduct of government employees.

The government defendants also seek to dismiss Plaintiff's anti-discrimination claims under RCW 49.60.010 for lack of subject matter jurisdiction. The United States has not waived sovereign immunity with respect to claims against the federal government under the Washington

Law Against Discrimination. Accordingly, Plaintiff's claims against the United States under RCW 49.60 *et seq.* must be dismissed. Furthermore, the Westfall Act immunizes federal employees from suit arising from the scope of their employment. *See* 28 U.S.C.§§ 2671, 2674, 2679. Thus, Plaintiff's claims against the government employees under RCW 49.60 must likewise be dismissed.

Finally, the Pioneer Defendants seek to dismiss Plaintiff's state law tort claims as state law claims over which the Court should decline to exercise supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction over state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.,* 114 F.3d 999, 1001 (9th Cir.1997) ( *internal citations omitted* ). None of the Section 1367 factors are present in this action. Because Plaintiff's state law tort claims arise out of the same nucleus of operative fact as his federal claims, the Court will exercise supplemental jurisdiction over Plaintiffs state law claims for the present time.

2.      Motion to Dismiss for Failure to State a Claim

Plaintiff asserts claims of false arrest, false imprisonment, malicious prosecution, abuse of process, outrage, and negligence under both the Federal Tort Claims Act and state law. The FTCA provides a cause of action against the federal government only; it is inapplicable to

ORDER ON MOTIONS - 16

private corporations or individuals such as the Pioneer Defendants.  *See* 28 U.S.C. §§ 1346, 2671–2680 (2008).  Thus, each of Plaintiff's claims under the FTCA are hereby dismissed as against the Pioneer defendants.  *See* Fed. R. Civ. P. 12(b)(6).  Conversely, the FTCA is the sole means by which a plaintiff may recover tort damages against the United States.  *Id. See also United States v. Sherwood,* 312 U.S. 584, 586 (1941).  Accordingly, each of Plaintiff's claims under state law are dismissed as against the government defendants.  The Court now addresses the substantive elements of each of Plaintiff's tort law causes of action.

*a.     False Imprisonment and False Arrest*

To state a claim of false imprisonment, a litigant must demonstrate that he has been "deprived of either liberty of movement or freedom to remain in the place of his lawful choice." *Bender v. Seattle,* 99 Wash.2d 582, 591, 664 P.2d 492 (1983) (internal citation omitted). Similarly, a false arrest occurs when a person with actual or apparent legal authority to arrest unlawfully restrains or imprisons another person. *Jacques v. Sharp,* 83 Wash.App. 532, 536, 922 P.2d 145 (1996). "The gist of false arrest and false imprisonment is essentially the same, viz., the unlawful violation of a person's right of personal liberty, and a false imprisonment occurs whenever a false arrest occurs." *Youker v. Douglas County*, 162 Wash.App. 448, 465, 258 P.3d 60, 68 (2011) (internal citation omitted).   However, in general, an inmate does not have a liberty interest in his placement in a particular institution or to a particular security classification. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *see also Asquith v. Dept. of Corrections,* 186 F.3d 407, 412 (3d Cir. 1999) (holding that a prisoner did not have a liberty interest under the Due Process Clause of the United States Constitution to remain in a halfway house rather than a

detention facility).  Here, Plaintiff did not have a "lawful choice" to remain in the PFH rather than at a federal detention center; he had no liberty interest in remaining there.

Plaintiff argues that his false arrest and imprisonment claims should remain because, even though he had no liberty interest in remaining in a particular penal institution, it was unlawful to transfer him in retaliation for pursuing litigation.  Indeed, a litigant may pursue litigation under 42 U.S.C. § 1983 for a transfer to a different prison facility resulting from the prisoner's exercise of his right of access to the courts.  *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (holding that the prohibition against retaliatory punishment in the prison context is clearly established law in the Ninth Circuit"); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988) ("If Franco can prove his allegation that he was subjected to false disciplinary charges and subsequent punishment for his cooperation with the Inspector General's inquiry, he is entitled to relief under section 1983.").   Putting aside whether such a cause of action is permissible in the *Bivens* context, the prohibition against retaliating against prisoners for exercising constitutional rights does not create a liberty interest in the prisoner's placement in a particular facility where there was none before.  Thus, while Plaintiff may potentially have a claim against the Pioneer employees under *Bivens,* Plaintiff's tort claims of false imprisonment and false arrest necessarily fail.  Plaintiff's claims for false arrest and false imprisonment are dismissed.

*b.    Malicious Prosecution and Abuse of Process*

A central element of a claim of malicious prosecution is the initiation or continuation of a prosecution of the plaintiff.  *See Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now,* 119 Wn. App. 665, 695 (2004).  Here, there is no allegation that criminal

proceedings were initiated against Plaintiff by the Pioneer defendants. To the extent that the administrative proceedings through which Plaintiff was transferred out of the PFH are considered by Plaintiff to constitute a "prosecution" for the purpose of the state law cause of action, the Court is aware of no Washington case law to support such a proposition. In a similar vein, the tort of abuse of process is "the misuse or misapplication of process, after the initiation of the legal proceeding, for an end other than that which the process was designed to accomplish." *Saldivar v. Momah,* 145 Wn. App. 365, 388 (2008). Again, there is no "legal proceeding" at issue in this matter and there is no Washington precedent extending the tort of abuse of process to administrative proceedings preceding prison transfers. Plaintiff's claims of malicious prosecution and abuse of process are dismissed.

c. *Outrage*

To succeed on a claim for outrage or IIED in Washington, a Plaintiff must prove three basic elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Rice v. Janovich*, 109 Wash.2d 48, 61 (1987) (citing Restatement (Second) of Torts). These elements are factual questions for the jury. However, a trial court must first determine "whether reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Strong v. Terrell*, 147 Wash.App. 376, 385 (2008) (quoting *Robel v. Roundup Corp.,* 148 Wash.2d 35, 51 (2002)). In doing so, the Court must determine whether the claim of outrage is predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Grimsby,* 85 Wash.2d 52, 59(1975)).

ORDER ON MOTIONS - 19

Here, the Pioneer defendants allegedly drafted a false incident report and recommended that Plaintiff be removed from a halfway house for pursuing litigation and/or for failing to notify the staff that he had an upcoming court date. The government defendants allegedly instructed the Pioneer defendants to draft the incident report and instructed the U.S. Marshalls to remove Plaintiff from the halfway house. Some months later, Plaintiff was transferred back into the halfway house and was ultimately released. This alleged behavior is not so outrageous in character that it exceeds all possible bounds of decency. Plaintiff's outrage claim is hereby dismissed.

### d.    Invasion of Privacy

Under the common law, the tort of invasion of privacy consists of four theories: (1) intrusion, (2) public disclosure, (3) false light, and (4) appropriation. *Eastwood v. Cascade Broadcasting Co.,* 106 Wash.2d 466, 469, 722 P.2d 1295 (1986). Each of these four privacy torts "involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." *Id.* However, loss of privacy is an "inherent incident[ ] of confinement." *See Hudson v. Palmer,* 468 U.S. 517, 526 (1984). "[O]nce the doors close, most privacy rights are left on the jailhouse steps." *Friedman v. Boucher*, 580 F.3d 847, 862 (9th Cir. 2009). Furthermore, Plaintiff's allegations concerning invasion of privacy are conclusory and fail to inform the Court or the defendants regarding what specific conduct constituted the alleged invasion. Plaintiff's claim for invasion of privacy is dismissed.

*e. Negligence*

To establish a claim for negligence, a plaintiff must show duty, breach, causation, and damages. *Ohler v. Tacoma Gen. Hosp.,* 92 Wash.2d 507, 511 (1979). A claim for negligent supervision requires a showing that: "(1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees." *Briggs v. Nova Servs.,* 135 Wash.App. 955, 966-67 (2006), *aff'd,* 166 Wash.2d 794 (2009). To establish a claim for negligent training, a litigant must show (1) the defendant owed the plaintiff a duty to properly train its employees; (2) the defendant breached that duty; and (2) the plaintiff's injury was proximately caused by the defendant's failure to properly train its employees. *See Dawes v. Motel 6 Operating L.P.,* 2006 WL 276928, *10 (E.D. Wash. Jan 31, 2006).

Plaintiff alleges that the defendants "breached their duty to use ordinary care in their dealings with Plaintiff by negligently filing a false Incident Report, unlawfully removing him from [PFH], without true legal justification or by abuse of authority, conducting untimely, improper and secret hearings, [and] falsely finding him guilty of the charge contained in the false Incident Report." Dkt. No. 24, ¶125. Plaintiff also alleges that the defendants "received negligent supervision and training from the Federal BOP and Pioneer Fellowship House, in regards to Plaintiff's federal and state constitutional rights." *Id.*

The government defendants' motion to dismiss Plaintiff's negligence claims is based on the fact that "Mr. Vega generally fails to articulate what duty the Government breached with

respect to the alleged events". Dkt. No. 29, p. 9. With respect to potential claims for negligent supervision and/or training, the government defendants argue that "Mr. Vega fails to allege facts to support the elements of a negligent supervision claim," and "Mr. Vega fails to allege facts that can, as a matter of law, support a negligent training claim." Dkt. No. 29, pp. 9-10. The Pioneer defendants join the government's motion in its entirety. Dkt. No. 30.

In general, the Court finds defendants' arguments insufficient to form a basis for dismissing Plaintiff's negligence claims. With respect to defendants' contention that Plaintiff has not identified the duty that was breached, the Court notes that Plaintiff's second amended complaint plainly identifies the "duty of ordinary care" as the duty that was allegedly breached. Dkt. No. 24, ¶ 125. The Court will not *sua sponte* determine whether the duty identified by Plaintiff is a duty that exists in the prison context. With respect to the potential negligent supervision and negligent training claims, the argument that "Mr. Vega fails to allege facts" that support those claims does not provide the Court with the requisite reasoned analysis that would support the denial or relief at this preliminarily stage. This is especially the case here, where Plaintiff is proceeding *pro se. See Eldridge*, 832 F.2d at 1137 (holding that courts are required to liberally construe pleadings of *pro se* litigants). The defendants' motions to dismiss Plaintiff's claims for negligence are denied. Plaintiff's claim for negligence under the FTCA against the United States remains, as does Plaintiff's state law tort claim of negligence against the Pioneer defendants.

## IV. CONCLUSION

Having considered the motions, responses and replies, exhibits and declarations attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

ORDER ON MOTIONS - 22

(1) Plaintiff's response to the court's order on Plaintiff's motions and motion for service of summons and complaint by the US Marshals Services (Dkt. No. 20) is hereby STRICKEN as moot.

(2) Defendant Pioneer Human Services' Motion to Dismiss (Dkt. No. 9) filed on behalf of Pioneer Human Services, Heather McIntyre, Bernadette Mathis, Kristen Cortez, Stephanie Jones, and Donald Jackson is GRANTED in part and DENIED in part.

(3) Defendants United States of America's Motion to Dismiss (Dkt. No. 29) filed on behalf of the United States of America, William Brown, Jr., Arinda Phillips, and Kevin Straight is GRANTED in part and DENIED in part.

DATED this 1st day of December 2011.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE