UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUAN D. VEGA, JR.,                          CASE NO. C11-632-RSM

          Plaintiff,                          ORDER ON MOTIONS

     v.

UNITED STATES OF AMERICA, et al.,

          Defendants.

## I. INTRODUCTION

Plaintiff Juan D. Vega, Jr., proceeding *pro se*, filed this action against the United States of America; Pioneer Human Services ("Pioneer") - a private corporation that owns and manages a residential re-entry center in Seattle, Washington called the Pioneer Fellowship House ("PFH"); and several individuals employed by each of these defendants. Plaintiff asserts fifteen causes of action arising from his removal from the re-entry house and placement back in federal detention. Before the Court are Pioneer's motion for summary judgment (Dkt. # 52) and federal Defendants' motion for summary judgment (Dkt. # 63). For the reasons set forth below,

1    Pioneer's motion (Dkt. # 52) is GRANTED and federal Defendants' motion (Dkt. # 63) is

2    GRANTED in part and DENIED in part.

3

4                                **II. BACKGROUND**

5            The parties are familiar with the facts of the case which are not repeated here. On

6    December 2, 2011, the Court dismissed several of Plaintiff's claims under Fed. R. Civ. P.

7    12(b)(6) and denied dismissal as to Plaintiff's constitutional, negligence, and discrimination

8    claims. Dkt. # 34. In January, Defendants filed a joint motion to stay discovery. Dkt. # 43.

9    Defendants offered that they would each file a motion to dismiss in the near future asking the

10   Court to dismiss all *Bivens* claims on the grounds of qualified immunity. *Id*. The Court granted

11   Defendants' motion and found that because Defendants' motions to dismiss would be based

12   solely upon Plaintiff's amended complaint, discovery was unnecessary. Dkt. # 46.

13           In April and May, Defendants decided to take a different course of action and filed

14   motions for summary judgment raising a variety of legal issues and relying upon documentary

15   evidence, including Plaintiff's inmate file. *See* Dkt. # # 52 & 63. In the meantime, Plaintiff

16   moved for discovery. *See* Dkt. # 51. On June 28, 2012, the Court denied Plaintiff's motion for

17   leave to conduct discovery and his motion for leave to file a second amended complaint. *See* Dkt.

18   # 80. Consistent with the Defendants' previous representations to the Court, the Court construes

19   Defendants' motions for summary judgment as motions for judgment on the pleadings under

20   Fed. R. Civ. P. 12(c). In deciding Defendants' motions, the Court will rely on the facts as

21   pleaded by Plaintiff in his amended complaint. *Id.*

22

23

24

## III. DISCUSSION

**A. Standard**

A Rule 12(c) motion on the pleadings is subject to the same standard as a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(b)(6); 12(c); *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).  In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted); *Fajardo*, 179 F.3d at 699. The Court is not, however, bound to accept the plaintiff's legal conclusions.  *Iqbal*, 556 U.S. at 678. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

**B. Plaintiff's Constitutional Claims**

Plaintiff contends that the individual federal Defendants conspired with Pioneer employees to draft a false incident report and unlawfully transfer him from PFH to FDC SeaTac because he was a litigious black male. Plaintiff ultimately alleges that the Defendants violated his First, Fourth, Fifth and Eight Amendments rights. Plaintiff's Constitutional claims are best interpreted as claims arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

1  *Narcotics*, 403 U.S. 388 (1971) because all of the Defendants are either federal personnel or staff

2  of a re-entry center under contract with the federal government. *Bivens* "recognized for the first

3  time an implied private action for damages against federal officers alleged to have violated a

4  citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

5      *Bivens* provides a remedy against individual federal actors for constitutional violations.

6  But before turning to the constitutional violations at issue, the Court must determine whether the

7  plaintiff states a colorable *Bivens* claim against the Pioneer Defendants who are not federal

8  agents. The Pioneer Defendants argue that a *Bivens* claim cannot be maintained against them, as

9  they are employees of a private re-entry house. The Court initially denied Pioneer

10 Defendants' 12(b)(6) motion because under *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 588 (9th

11 Cir. 2010), employees of private entities operating under color of federal law may be liable under

12 *Bivens*. Dkt. # 34, p. 12. Pioneer Defendants challenge the Court's finding in light of new

13 Supreme Court precedent. Earlier this year, the Supreme Court reversed the Ninth Circuit Court

14 of Appeal's decision in *Pollard* and held that there is no implied *Bivens* remedy for a federal

15 prisoner seeking damages from personnel employed by a privately owned firm. *Minneci v.*

16 *Pollard*, 132 S. Ct. 617, 625-626 (2012). Because *Minneci* clarified that private employees acting

17 under color of federal law cannot be held liable under *Bivens*, Plaintiff's *Bivens* claims against

18 the Pioneer Defendants are no longer colorable. Therefore, the Court grants the Pioneer

19 Defendants' motion as to the *Bivens* claims.

20     The individual federal Defendants named in this action seek to dismiss Plaintiff's *Bivens*

21 claims on the basis of qualified immunity, which shields government officials "from liability for

22 civil damages insofar as their conduct does not violate clearly established statutory or

23 constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,*

24

1   457 U.S. 800, 818 (1982). Qualified immunity is both a defense to liability and an "entitlement

2   not to stand trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

3          The Supreme Court established a two-step inquiry for evaluating qualified immunity

4   claims. *Saucier v. Katz*, 533 U.S. 194 (2001).  The Court must determine (1) whether the facts

5   alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so,

6   whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id*.

7   at 201. Courts, however, may exercise discretion when deciding which of the two prongs to

8   address first in light of the circumstances of each particular case. *Pearson v. Callahan*, 555 U.S.

9   223, 236 (2009). The Court will first determine whether Plaintiff has claimed a deprivation of a

10  constitutional right. If the Court finds that Plaintiff has alleged a denial of a constitutional right,

11  the Court will then determine whether the right was "clearly established" at the time of the

12  alleged misconduct. Each constitutional claim is addressed below.

13  a.     *Fifth Amendment Due Process Claim*

14         The Due Process Clause of the Fifth Amendment provides individuals with two types of

15  constitutional protection against the government: substantive and procedural due process. *United*

16  *States v. Salerno*, 481 U.S. 739, 746 (1987).  Substantive due process prevents deprivations of

17  protected rights, while "[p]rocedural due process imposes constraints on governmental decisions

18  which deprive individuals of 'liberty' or 'property' interests". *Mathews v. Eldridge,* 424 U.S.

19  319, 332 (1976).  In order to decide whether the individual federal Defendants violated

20  Plaintiff's substantive due process rights, the Court must first determine whether Plaintiff was

21  deprived of life, liberty, or property. Here, Plaintiff claims a deprivation of his liberty interests

22  because he was transferred back to FDC against his will. The Due Process Clause, however, does

23  not protect convicted prisoners against transfer from one institution to another. *Wilkinson v.*

24  *Austin*, 545 U.S. 209, 221-222 (2005) (inmates have no liberty interest in avoiding transfer to

1   more adverse conditions of confinement).  As this Court previously stated, "Plaintiff did not have

2   a 'lawful choice' to remain in the PFH rather than at a federal detention center." Dkt. # 34, p.18.

3   Apart from constitutionally derived liberty rights, statutes and regulations can also create a

4   protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). Here, the federal law

5   regulating imprisonment of federal inmates states, "[t]he Bureau of Prisons shall designate the

6   place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The language does not place any

7   limitations on BOP's discretion in transferring inmates from one facility to another and therefore

8   creates no liberty interest entitled to protection under the Due Process Clause. Consequently,

9   neither the law on point nor the Due Process Clause itself affords Plaintiff a protected liberty

10  interest in his place of imprisonment. Since Plaintiff does not have a constitutionally protected

11  interest in his place of confinement, he could not have suffered a violation of his substantive due

12  process rights by being transferred to FDC SeaTac. Therefore, the Court grants the government's

13  motion as to the substantive due process claim.

14          Despite not having a cognizable liberty interest in the place of confinement, an inmate's

15  procedural due process rights can be violated when a prison disciplinary hearing board convicts

16  an inmate with no evidence. *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999).

17  Generally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full

18  panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418

19  U.S. 539, 556 (1974). Nonetheless, "the minimum requirements of procedural due process"

20  require that the findings of the prison disciplinary board [be] supported by some evidence in the

21  record. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

22          Plaintiff claims that the disciplinary hearing held on October 23, 2008 violated his rights

23  to a timely hearing set forth on the "FBOP's Disciplinary Process pursuant to 28 C.F.R. §541.11

24

and §541.15(b)". Dkt. 24, ¶¶ 71, 74. Since the Court could not trace the aforementioned C.F.R. cited by Plaintiff, it will construe Plaintiff's argument under 28 C.F.R. §541.7(c) and 28 C.F.R. §541.8(c) ("Unit Discipline Committee (UDC) review of the incident report" and "Discipline Hearing Officer (DHO) hearing" respectively).

Below is a timeline of relevant facts related to Plaintiff's procedural due process claim:

- October 16, 2008: Pioneer Defendants created the allegedly false incident report;
- October 17, 2008: Plaintiff was transferred to the FDC SeaTac;
- October 21, 2008: Pioneer staff conducted an investigation and recommended termination from PFH;
- October 23, 2008: BOP hearing was discontinued for lack of evidence;
- January 15, 2009: Plaintiff was transferred to another reentry center in Tacoma;
- June 5, 2009, Plaintiff was released from BOP custody before his projected release date of July 13, 2009.

Dkt. #24. Ordinarily, the Unit Discipline Committee (UDC) will review the incident report "within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. §541.7(c). Here, the incident report was created on a Thursday (October 16, 2008) and the hearing was conducted on the following Thursday (October 23, 2008). Thus, the hearing occurred on the fifth work day after the incident report was created in compliance with the suggested time frame.

Plaintiff also contends that individual federal Defendants relied on Pioneer's false incident report in deciding to transfer him back to FDC SeaTac. The government, in turn, concedes that the BOP Discipline Hearing Officer, Randy McWilliams, did not certify the incident report because of a lack of evidentiary support, and expunged the report on November 18, 2008. Dkt. # 63, p.6. As a result of expunging the false incident report, Plaintiff was never convicted of a disciplinary violation. Furthermore, even if Plaintiff was convicted of a disciplinary violation, the subsequent expungement of such conviction would remedy any due process violation leading to the conviction. *Burnsworth*, 179 F.3d at 771.

1    More troubling, however, is the fact that Plaintiff was transferred to FDC SeaTac on

2  October 17, 2008, almost a week before the hearing took place on October 23, 2008. It is true

3  that BOP has the discretion to "designate the place of the prisoner's imprisonment," which gives

4  BOP the right to transfer, *not to punish*, inmates without a hearing. 18 U.S.C. § 3621(b).

5  "[R]emov[al] from program and/or group activity" is listed on BOP's regulation as an "available

6  sanction" for low, moderate and high severity level prohibited acts to be enforced after a hearing

7  by the Disciplinary Committee.  28 C.F.R. § 541.3; § 541.7(f) (if the UDC finds that an inmate

8  "committed a prohibited act(s), the UDC can impose any of the available sanctions…").

9  Therefore, it appears that the Bureau of Prisons does not have the right to punish inmates,

10 *including termination of a program,* prior to a disciplinary hearing.

11   In this case, if BOP transferred Plaintiff as a *punishment* for committing a prohibited act,

12 it should have held Plaintiff's disciplinary hearing prior to his transfer as required under 28

13 C.F.R. § 541.7 in order to ascertain whether he actually committed a "prohibited act" under 28

14 C.F.R. § 541.3. Whether Plaintiff's transfer was punitive or an exercise of BOP's discretionary

15 power is a factual issue that cannot be dismissed at the pleading stage.

16   Considering the discrepancies between the statute (giving BOP full discretion in

17 designating place of imprisonment) and the regulation (describing removal from a program as a

18 form of punishment to be imposed after a hearing); the nebulous reasoning behind Plaintiff's

19 transfer; and the issues of material fact surrounding the hearings, the Court finds that Plaintiff

20 alleged sufficient facts to form a cognizable procedural due process claim against the federal

21 Defendants.

22   Since Plaintiff has established a colorable claim against the individual federal Defendants

23 for violation of his due process rights, the Court must now decide whether such right was

24

"clearly established" at the time Plaintiff was transferred to FDC. This inquiry turns on the "'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Harlow,* 457 U.S. at 818-819). The objective question in this case is whether the individual federal Defendants could have believed Plaintiff's transfer prior to a disciplinary hearing to be lawful in light of clearly established law and the information possessed. *Id*. at 641. While the right to due process of law is clearly established by the Due Process Clause, the test of "clearly established law," however, must be more specific than that in order to bear some relationship to the "objective legal reasonableness" of the action in question. *Id*. at 639. Here, a reasonable federal officer would have known that Plaintiff had a right to a disciplinary hearing under 28 C.F.R. § 541.7 prior to being sanctioned. Therefore, the Court finds that Plaintiff had a "clearly established" right to a hearing prior to being sanctioned. Because the unlawfulness act of terminating Plaintiff from the program as a *punishment* for violating a condition of the community program prior to a disciplinary hearing is clearly established, individual federal Defendants are not entitled to qualified immunity. Consequently, the Court denies the government's motion as to the procedural due process claim. In addition, the Court grants Plaintiff leave to conduct discovery as to this issue.

b.    *First Amendment Free Speech Claim*

Plaintiff alleges that his First Amendment rights were violated when he was "denied his right to correspond and appear … in his civil matter against the Department of Labor and Industries, [Juan D. Vega, Jr., v. Dept' of Labor & Indus. of State of Wash.]." Dkt. # 24, ¶ 82. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (U.S.N.C. 1977).  In *Lewis v. Casey,* 518 U.S. 343(1996), however, the Supreme Court revised *Bounds* and explained that prisoners' right of access to the courts does

1    not guarantee inmates the resources to transform themselves into "litigating engines capable of

2    filing everything from shareholder derivative actions to slip-and-fall claims;" rather, it provides

3    them with the tools they need in order to "attack their sentences, directly or collaterally, and in

4    order to challenge conditions of confinement." *Id* at 355. Inmates' right of access to the courts is

5    therefore restricted to non-frivolous direct criminal appeals, habeas corpus proceedings, and civil

6    rights actions. *Id* at 354. Apart from that, "[i]mpairment of any other litigating capacity is simply

7    one of the incidental (and perfectly constitutional) consequence of conviction and incarceration."

8    *Id* at 355.  Plaintiff's cause of action against the Department of Labor and Industries is a civil

9    action. As such, Plaintiff has not alleged a deprivation of his First Amendment right.

10        Additionally, Plaintiff claims it was unlawful to transfer him in retaliation for pursuing

11    litigation. Indeed, the prohibition against retaliatory punishment is "clearly established law" in

12    the Ninth Circuit for qualified immunity purposes. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

13    1995). Prisoners may not be transferred in retaliation for exercising their First Amendment

14    rights. "This is so despite the fact that prisoners generally have no constitutionally-protected

15    liberty interest in being held at, or remaining at, a given facility." *Id.* The parties disagree as to

16    the reasons for Plaintiff's transfer to FDC. Individual federal Defendants essentially contend that

17    Plaintiff transfer was a lawful exercise of BOP's discretion to designate place of imprisonment,

18    while Plaintiff claims his transfer was due to his active pursuit of litigation. In support of his

19    allegations, Plaintiff quotes Donald Jackson, the PFH Home Confinement Coordinator/Center

20    Discipline Committee Chairperson for the Federal BOP stating that Plaintiff had violated a

21    condition of community program by "pursuing an active case with the Department of Labor and

22    Industries." Dkt. # 24, ¶59. While Mr. Jackson's recommendation that Plaintiff be terminated "to

23    impress upon … other residents that this kind of behavior will not be tolerated" is considered

24

retaliatory, Mr. Jackson is not a federal employee and therefore cannot be sued for violating

Plaintiff's First Amendment rights under *Bivens*. Accordingly, the Court grants the government's

motion as to the First Amendment claim.

c.   *Fifth Amendment Equal Protection Claim*

Plaintiff alleges that the individual federal Defendants deprived his "clearly established

constitutional rights of equal protection of the laws of the United States and the equal rights,

privileges and immunities of a citizen of the United States because he was [*sic*] a black male."

Dkt. # 24, p.27. Prisoners are protected under the Equal Protection Clause of the Fifth

Amendment from invidious discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539

(1974).  In order to establish a violation of the Equal Protection Clause, Plaintiff must present

evidence of discriminatory intent based upon his membership in a protected class. *See*

*Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082

(9th Cir. 2003). Intentional discrimination means that the alleged discriminatory conduct

occurred at least in part because of Plaintiff's protected status. *Maynard v. City of San Jose,* 37

F.3d 1396, 1404 (9th Cir.1994).  Plaintiff states that Defendants, determined to make an example

of him, "choose [*sic*] Plaintiff, who is a black male from over 200,000 plus inmates in the

Federal Bureau Prisons system, as the only inmate that is required to seek their permission before

accessing a court by written correspondence." Dkt. # 24, ¶ 44. There is, however, no factual

content in Plaintiff's complaint that permits the Court to draw such an inference. There is

basically no factual allegation – other than the allegation that Plaintiff himself is black – that

would support the inference that the defendant's actions were motivated by racial aninums. As

the Court previously noted, "Plaintiff has failed to plead any factual allegations that would

support his conclusion that the actions of the defendants were motivated by racial animus." Dkt.

# 34, p.10-11. Although the Court must liberally construe Plaintiff's claims, Plaintiff's

1   allegations do not assert the factual basis for an Equal Protection claim. *United States v. Fisher,*

2   38 F.3d 1144, 1147 (10th Cir.1994). Even though Plaintiff is *pro se*, he must do more than make

3   conclusory allegations in support of his constitutional claims as the Court cannot fashion his

4   arguments for him. *Id.* Thus, even assuming the truth of Plaintiff's allegation that he was the

5   only inmate required to seek permission before accessing a court because he is black, his

6   conclusory allegations do not allow for proper analysis. Therefore, Plaintiff has failed to allege

7   sufficient facts to establish a violation of his rights under the Equal Protection clause of the Fifth

8   Amendment.  As a result, the Court grants the government's motion as to the Equal Protection

9   claim.

10   d.   *Fourth Amendment Search and Seizure Claim*

11           Plaintiff alleges that the U.S. Marshals violated "his clearly established constitutional

12   right to be secure in his person from unreasonable force and seizure, without authority of law, or

13   by abuse of authority of law, guaranteed by the Fourth Amendment," (Dkt. # 24, ¶ 77) when they

14   picked him up at PFH and transferred him to FDC SeaTac on October 17, 2008. *Id.* at ¶ 85. "The

15   Fourth Amendment right of people to be secure against unreasonable searches and seizures

16   'extends to incarcerated prisoners; however, the reasonableness of a particular search is

17   determined by reference to the prison context.'" *Thompson v. Souza,* 111 F.3d 694, 699 (9th

18   Cir.1997) (internal citation omitted). Prisoners bear the burden of showing that the prison official

19   intentionally used "exaggerated or excessive means to enforce security." *Michenfelder v.*

20   *Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). Plaintiff makes no such allegation. At best, he

21   contends that the Marshals were presumably "armed with guns" at the time he was seized. Dkt. #

22   24, ¶ 55. Plaintiff makes no factual allegations that would sustain the inference that the Marshals

23   engaged in unreasonable or exaggerated actions. Because Plaintiff has failed to allege sufficient

24   facts to establish a violation of his clearly established right under the Fourth Amendment, the

1  Court grants the government's motion for judgment on the pleadings as to the Fourth

2  Amendment Search and Seizure claim.

3  e.    *Eighth Amendment Unreasonable Force Claim*

4          Plaintiff alleges that individual federal Defendants acted with "unreasonable force." Dkt.

5  # 24, ¶¶ 77, 82(b), 85. The Eighth Amendment prohibits the imposition of cruel and unusual

6  punishment and "embodies broad and idealistic concepts of dignity, civilized standards,

7  humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

8  quotations omitted). The use of excessive physical force against a prisoner may constitute cruel

9  and unusual punishment even though the inmate does not suffer serious injury. *Hudson v.*

10  *McMillian*, 503 U.S. 1, 4 (1992). The core of judicial inquiry is "whether force was applied in

11  good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

12  *Id*. at 6. "To violate the Cruel and Unusual Punishments Clause, a prison official must have a

13  'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff

14  has failed to articulate any instances involving the use of unreasonable force by individual

15  federal Defendants, let alone their state of mind. Plaintiff makes no factual allegations that would

16  sustain the inference that the Marshals used unreasonable force when removing and transporting

17  him.  Plaintiff provided no indicia of unreasonable force and consequently failed to establish a

18  violation of his Eight Amendment right. Therefore, the Court grants the government's motion as

19  to the Eight Amendment claim.

20  **B.    Plaintiff's Negligence Claims**

21          Plaintiff asserts causes of action for negligence against the government and Pioneer

22  Defendants. Plaintiff's negligence claim against the government arises under the Federal Torts

23  Claims Act ("FTCA"), while Plaintiff's negligence claim against Pioneer Defendants arises

24  under Washington State law.

1.     <u>Negligence under the FTCA</u>

Plaintiff raises three tort claims against the United States of America: general negligence, failure to train, and failure to supervise. The United States is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA, 28 U.S.C. § 1346(b), is a limited waiver of sovereign immunity, rendering the United States liable for certain torts committed by federal employees. Under the FTCA, the United States can be held liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment..." *Id*. As a preliminary matter, "plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the Act's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 700 (9th Cir. 1992); 28 U.S.C. § 1346(b). On December 2, 2011, the Court found that it has jurisdiction to hear Plaintiff's tort claims under the FTCA to the extent that they are predicated on the conduct of government employees. Dkt. # 34. The burden then shifts to the government to prove the applicability of one of the exceptions to Federal Tort Claims Act's general waiver of immunity. *Prescott* at 702.

a.    *General Negligence and A duty of Ordinary Care*

In order to prove a cause of action for negligence, Plaintiff must establish existence of a duty owed, breach of that duty, resulting injury, and proximate cause between breach and injury. *Tincani v. Inland Empire Zoological Soc.,* 124 Wash. 2d 121, 127 (1994). "Washington courts have long recognized a jailor's special relationship with inmates, particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 170 Wash. 2d 628, 635 (2010) (citation omitted). The duty owed to inmates is a positive and nondelegable duty arising out of the "special relationship that results when a custodian has complete control over a prisoner deprived of liberty." *Shea v. City of Spokane,* 17 Wash.App. 236, 242 (1977), *aff'd,* 90 Wash.2d

1   43, 578 P.2d 42 (1978). Therefore, because Defendants owed a duty to Plaintiff to ensure his

2   health, welfare, and safety, the Court must determine whether such duty was breached.

3        In Washington State, breach of the jailors duty is found in cases where inmates either

4   died or sustain serious bodily harm. *See Gregoire*, 170 Wash. 2d 628 (jailors violated their duty

5   of care to a prisoner after an inmate committed suicide by hanging in his jail cell); *Kusah v.*

6   *McCorkle,* 100 Wash. 318, 325 (1918) (breach of duty of care was found when prisoner was

7   attacked, cut, and stabbed with a knife by another inmate); *Thompson v. King County*, 163 Wash.

8   App. 184 (2011) (jailor's failure to take reasonable steps to protect inmate from being raped

9   constituted negligence).  The scope of jailors' duty to inmates in Washington State is therefore

10  narrowly defined by the courts as a duty to prevent actual physical harm to the prisoner. Here,

11  Plaintiff does not specify any incident involving physical harm. Plaintiff also does not allege any

12  facts that would allow this Court to conclude that individual federal Defendants disregarded

13  Plaintiff's safety and health. As a result, the Court grants the government's motion as to the

14  general negligence claim under the FTCA.

15  *b.    Negligent Training and Supervision*

16       Plaintiff alleges that federal Defendants "received negligent supervision and training

17  from the FBOP." Dkt. # 24, ¶ 125. The question before the Court is then whether BOP's

18  decisions regarding supervision and training are within the discretionary function exemption to

19  the liability of the United States under FTCA. The discretionary function exception is a

20  limitation on the FTCA's waiver of sovereign immunity. 28 U.S.C § 2680 (a). It covers acts

21  involving "an element of judgment or choice" if they are based on considerations of public

22  policy. *United States v. Gaubert*, 499 U.S. 315, 316 (1991). The discretionary function exception

23  will not apply when "federal statute, regulation, or policy specifically prescribes a course of

24  action for employees to follow." *Id*. (quoting  *Berkovitz by Berkovitz v. United States*, 486 U.S.

1   531,536 (1988)). To determine applicability of discretionary function exception, the Court must

2   determine: (1) whether challenged actions involve an element of judgment or choice, and (2) if a

3   specific course of action is not specified, whether discretion left to the government is of a kind

4   that the discretionary function exception was designed to shield; namely, actions and decisions

5   based on considerations of public policy. *Myers v. U.S.*, 652 F.3d 1021, 1028 (9th Cir. 2011).

6       The BOP is responsible for the "management and regulation of all Federal penal and

7   correctional institutions," "the safekeeping, care, and subsistence of all persons charged with or

8   convicted of offenses against the United States…" and "the protection, instruction, and discipline

9   of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042

10  (a)(1) – (a)(3). This provision does "not mandate a specific, non-discretionary course of conduct,

11  but rather leaves the BOP ample room for judgment." *Santana-Rosa v. United States*, 335 F.3d

12  39, 44 (1st Cir. 2003) (internal citation omitted). Considering the wide discretion afforded to the

13  BOP, the first prong of *Myers* analysis is satisfied. Next, the Court considers whether BOP's

14  decisions regarding training and supervision of its employees are of the kind that discretionary

15  function exception was designed to shield.

16      The Ninth Circuit has held the hiring, training and supervision of employees to be

17  discretionary acts within the discretionary function exemption to the FTCA.  *See Nurse v. United

18  States*, 226 F.3d 996, 1001-02 (9th Cir. 2000) (holding that plaintiff's claims of "negligent and

19  reckless employment, supervision and training of" employees "fall squarely within the

20  discretionary function exception"); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir.

21  2009) (The decision of whether and how to retain and supervise an employee is the type of

22  discretionary judgment that the exclusion was designed to protect). Here, Plaintiff has not

23  described any incident nor articulated any facts to support his conclusion that the individual

24

federal Defendants received negligent training and supervision. Additionally, the government has met its burden of proof to establish that BOP's training and supervision decisions fall within the discretionary function exception to the FTCA. Therefore, the Court grants the government's motion as to the negligent training and supervision claims.

2.   Negligence under Washington State law

Plaintiff claims that he "was falsely charge[d] with violating a condition of a Community Program, falsely found guilty of the false charge, and falsely imprisoned at the Federal Detention Center from October 17, 2008, to January 15, 2009, for ninety days; which …resulted in severe and extreme fright, shock, horror and emotional distress…[and] physical injuries, pain, suffering, mental anguish, emotional distress, and lost wages." Dkt. # 24, ¶ 144. Under Washington State law, a cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Pedroza v. Bryant,* 101 Wash.2d 226, 228 (1984). "Actual loss or damage is an essential element in the formulation of the elements necessary for a cause of action in negligence." *Gazija v. Nicholas Jerns Co.*, 86 Wash. 2d 215, 219 (1975).  Therefore, if Plaintiff has not suffered appreciable harm as a consequence of Defendant's negligence, he cannot establish a cause of action for negligence. *Id*. Plaintiff claims that he was incarcerated for ninety days and suffered physical injuries, emotional distress and lost wages as a result of Defendants' negligent acts.

a.   *Incarceration for ninety days*

Plaintiff asserts he was injured by having to serve ninety days at FDC SeaTac after being transferred from Pioneer Fellowship House. It is undisputed that Plaintiff was sentenced to serve a sixty-three month sentence and pursuant to 18 U.S.C. § 3621(b), BOP "may at any time … direct the transfer of a prisoner from one penal or correctional facility to another." As previously

stated, inmates have no liberty interest in avoiding transfer to another correctional facility.

Therefore, BOP has the right to transfer inmates to any BOP institution. Given that BOP was not

imposing any additional imprisonment time on Plaintiff by transferring him to FDC SeaTac,

Plaintiff was not harmed by having to serve his sentence at FDC SeaTac rather than at PFH.

b.    *Physical, emotional, and financial harm*

Plaintiff asserts he suffered severe and extreme fright, shock, horror, emotional distress,

physical injuries, pain, suffering, mental anguish, and lost wages as a result of being transferred

to SeaTac based on a false report. Dkt. # 24. As a general rule, Washington State courts have

denied recovery for emotional distress in cases not involving malice or wrongful intent, unless

there has been an actual invasion of a plaintiff's person or security. *See Schurk v. Christensen*, 80

Wash. 2d 652 (1972); *White River Estates v. Hiltbruner,* 134 Wash.2d 761, 766 (1998) (holding

that emotional distress can be remedied only if based in intentional tort); *Birchler v. Castello*

*Land Co.,* 133 Wash.2d 106 (1997) (allowing recovery of emotional distress damages where

there was an intentional interference with property interests); *Cagle v. Burns & Roe, Inc.,* 106

Wash.2d 911, 916 (1986) (holding that damages for emotional distress are available upon proof

of an intentional tort). Here, Plaintiff has not claimed that the emotional distress involved malice

or was a direct result of physical harm. Ordinary negligence, such as in this case, will usually not

suffice as the basis for recovering emotional damages without physical injury. Emotional distress

caused by negligent acts cannot be remedied unless the act causing the mental fright also

threatens immediate bodily harm. *Smith v. Rodene*, 69 Wash. 2d 482, 489, 418 P.2d 741, 746

(1966) *amended*, 423 P.2d 934 (Wash. 1967) (internal citations omitted). On the other hand, if

mental suffering or emotional distress is caused by a willful act, recovery is permitted. *Id*.

Plaintiff's emotional distress claim is based on general negligence, rather than an intentional or

willful tort. In such cases, physical injury must be proven before damages for emotional distress

are recoverable. *Pickford v. Masion*, 124 Wash. App. 257 (Div. 2 2004), citing *Kennedy v. Byas,*
867 So.2d 1195, 1197–98 (Fla.2004) (Florida district court denied emotional distress damages
where the claim involved only negligence, not malicious behavior). Here, Plaintiff has made no
specific claim or reference to any physical injury. Plaintiff has also not claimed that his
emotional distress was a result of a willful tort by the Defendants. Consequently, as matter of
law, Plaintiff does not have a cognizable claim of emotional distress under Washington State
law.

In addition to emotional harm, Plaintiff also claims he suffered "lost wages," as he had
secured employment with Pioneer Food Services prior to his transfer and was making $8.07 per
hour. But given that Plaintiff had no right to remain at PFH; he is not entitled to any wages he
would have been able to earn by being at the re-entry center. Accordingly, Plaintiff failed to
establish that he suffered any physical, emotional, or financial harm as a result of his transfer to
FDC SeaTac.

Even if Plaintiff had suffered appreciable harm, in order to assert a claim he must
establish that it was a result of Pioneer Defendants' violation of a duty of care. As previously
mentioned, jailors have a duty to ensure inmates' health, welfare, and safety. The threshold
question then becomes whether Pioneer Defendants are considered "jailors" for the purpose of
this negligence claim. Pioneer Defendants contend that they owed no special duty to plaintiff
because "BOP is the only entity, as the jailor, who may discipline or otherwise sanction a
resident pursuant to 28 C.F.R. 541.3." Dkt. # 52, p.52. Furthermore, Defendants contend that
Pioneer cannot discipline or sanction a resident, but may only make recommendations to BOP.
*Id*. Indeed, PFH did not discipline Plaintiff. Instead, Pioneer employees wrote a report and
recommended Plaintiff's transfer to the BOP. While PFH was involved in the preliminary steps

1  leading to Plaintiff's transfer, BOP made the ultimate determination. Consequently, Plaintiff has

2  failed to meet the elements of a negligence claim. Therefore, the Court grants Pioneer

3  Defendants' motion as to the negligence claim under Washington State law.

4  **C.   Plaintiff's Discrimination Claim**

5  Plaintiff claims that Pioneer Defendants denied Plaintiff of his rights under the

6  Washington State Constitution in violation of RCW 49.60.010, et. seq., commonly referred as

7  Washington Law Against Discrimination ("WLAD"). WLAD prohibits,

8  > [D]iscrimination in employment, in credit and insurance transactions, in
   > places of public resort, accommodation, or amusement, and in real

9  > property transactions because of race, creed, color, national origin,
   > families with children, sex, marital status, sexual orientation, age,

10 > honorably discharged veteran or military status, or the presence of any
   > sensory, mental, or physical disability or the use of a trained dog guide or

11 > service animal by a person with a disability…

12 Causes of action under WLAD can be sustained only by individuals who fall within the

13 definition of persons protected under RCW 49.60, including those who engage in credit and

14 insurance transactions, in places of public resort, accommodation, or amusement, and in real

15 property transactions, or are breastfeeding mothers. RCW 49.60.030. At first glance, Plaintiff

16 does not fall into any of these categories and therefore lacks standing to sustain a claim under

17 WLAD. Construing Plaintiff's claims liberally, however, the Court could deduce that Plaintiff

18 believes he is protected under WLAD because Pioneer Fellowship House is a "place of

19 accommodation". The definition of "place of accommodation" under RCW 49.60.040 does not

20 include a private re-entry house. Nonetheless, "The definition of public accommodation is a

21 broad one and need not list every possible example to which it applies." *Apilado v. N. Am. Gay*

22 *Amateur Athletic Alliance*, 792 F. Supp. 2d 1151, 1159 (W.D. Wash. 2011).

23 Under WLDA public accommodation is defined as:

24

> [A]ny place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities, whether conducted for the entertainment, housing, or lodging of transient guests, or for the benefit, use, or *accommodation* of those seeking health, recreation, or rest, or for the burial or other disposition of human remains, or for the sale of goods, merchandise, services, or personal property, or for the rendering of personal services...*PROVIDED, That nothing contained in this definition shall be construed to include or apply to any institute, bona fide club, or place of accommodation, which is by its nature distinctly private*… (emphasis added).

To this date, no Washington case has applied WLAD to a prisoner's treatment by a jail or residential treatment center because they are not places of public accommodation. Residential re-entry centers are notably distinctly private, as absent a criminal sentence, members of the public cannot get accommodation in such facilities. The Court finds Pioneer Fellowship House is a private facility not a place of public accommodation. *Apilado*, 792 F. Supp. 2d 1151 (describing factors for the Court to consider in determining whether an entity is a public accommodation: (1) charges for admission, (2) accommodates those seeking recreation, (3) sells goods and merchandise, (4) operates where food or beverages of any kind are sold for consumption on the premises, (5) offers sports and recreation activities, and (6) operates where the public gathers for amusement or recreation). PFH does not offer sports and recreation activities or sells food and beverages to the public. PFH certainly does not accommodate those seeking recreation, charges for admission, or sells goods. In sum, re-entry centers such as PFH do not as a general course of business provide goods or services to the general public. Additionally, Plaintiff has not alleged any facts that would allow the Court to infer that PFH is a place of public accommodation. Therefore, the Court grants Pioneer Defendants' motion as to the WLAD claim.

## IV. CONCLUSION

Having considered the motions, responses and replies, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant Pioneer Human Services's Motion for Judgment on the Pleadings (Dkt. #
52) filed on behalf of Pioneer Human Services, Heather McIntyre, Bernadette Mathis,
Kristen Cortez, Stephanie Jones, and Donald Jackson is GRANTED.

(2) Defendants United States of America's Motion for Judgment on the Pleadings (Dkt. #
63) filed on behalf of the United States of America, Willian Brown, Jr., Kevin
Straight, and Arinda Philips is GRANTED in part and DENIED in part, as discussed
above.

(3) The Court grants Plaintiff leave to conduct discovery on the procedural due process
claim.

(4) The Clerk is directed to send copies of this Order to Plaintiff and counsel of record.

DATED this 1st day of November 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE