UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN D. VEGA, JR., | |
| Plaintiff, | |
| v. | Case No. C11-632 RSM |
| UNITED STATES OF AMERICA, et al., | ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION |
| Defendants. | |

This matter is before the Court on the federal Defendants' motions for reconsideration
(Dkt. # 92). For the reasons that follow, the Court grants Defendants' motion on the basis of
qualified immunity. Accordingly, the Court vacates its finding in section III(B)(a) of its prior
Order (Dkt. # 91) and grants the federal Defendants' motion for judgment on the pleadings in its

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 1

entirety. Dkt # 63. As this Order results in the complete dismissal of Plaintiff's Amended

Complaint, all pending motions are stricken as MOOT. Dkt. ## 98, 99, 108.

## I. BACKGROUND

Plaintiff was sentenced to sixty-three months of imprisonment, and the Bureau of Prisons

("BOP") designated that he serve his sentence at Sheridan Prison Camp. On August 20, 2008,

Plaintiff was transferred to participate in a residential drug treatment program at Pioneer

Fellowship House ("PFH"), a residential reentry center and an independent contractor of the

BOP. Dkt. # 24, ¶ 24. Plaintiff believed that upon successful completion of the program, his

institutionally presumptive release date would be February 15, 2009. Dkt. # 81, p.11. At different

occasions,  Plaintiff informed Pioneer employee Counselor Bernadette Mathis that he had five

active cases pending in several different courts in which he was representing himself *pro se*, and

that he would be submitting requests to leave PFH to go to the Ninth Circuit Court of Appeals

library or the King County Superior Court library. Dkt. # 24 at ¶¶ 25-26. Ms. Mathis told

Plaintiff those requests would be denied pursuant to Pioneer House policy. *Id*. at ¶ 26.

On September 17, 2008, Ms. Mathis met with Plaintiff to review his programming at

PFH. At this meeting, Plaintiff was presented with a case note document which he refused to

sign. *Id*. at ¶ 33. On September 24, 2008, Ms. Mathis told Plaintiff that if he did not sign the case

note, she would "write him up for failure to program." *Id*. at ¶ 35. Plaintiff signed the document

at that time, but wrote the words "under duress," following his signature. *Id*.

Between September 25, 2008, and October 16, 2008, Plaintiff lived at PFH without

incident. On October 8, 2008, Plaintiff received a "Level Advancement" for complying with

work requirements, paying subsistence, participating in drug abuse treatment, and being free of

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 2

any incident write ups. *Id*. at ¶¶ 40-41. However, on October 16, 2008, a meeting in which Defendants designed a plan for Plaintiff's removal by writing a false report purportedly took place. *Id*. at ¶¶ 41-42. Plaintiff alleges that the statements in the incident report were false and were only included "[t]o cover up Defendants false, unlawful and illegal write up." *Id*. at ¶ 53.

On October 17, 2008, two Marshalls transferred Plaintiff in handcuffs from PFH to the Federal Detention Center ("FDC") at SeaTac, pending a hearing on the violation. *Id*. at ¶¶ 54-55. On October 21, 2008, Pioneer staff conducted an investigation regarding the incident report, and concluded that Plaintiff violated a condition of a community program. Pioneer House staff then recommended his termination from Pioneer House to BOP. *Id*. at ¶ 57. On October 23, 2008, Donald Jackson, the PFH Home Confinement Coordinator/Center Discipline Committee Chairperson for the BOP, issued "Findings of the Committee" regarding Plaintiff's violation. Mr. Jackson concluded that "the act was committed as charged" and recommended that Plaintiff be terminated "to impress upon you and other residents that this kind of behavior will not be tolerated and that they will be held accountable when they violate BOP and PFH rules and regulations." *Id.* at ¶¶ 59-60.

Mr. Jackson noticed that the "Investigation Report" issued by PFH counselors was incomplete and decided to terminate the hearing until he was able to secure more evidence about the alleged violation. *Id.* at ¶ 61.  Mr. Jackson then sent a letter to the DHO stating that Plaintiff's hearing "was delayed" due to his transfer to FDC. Ultimately, BOP overturned the Pioneer House discipline report and expunged it from Plaintiff's record. Dkt. # 81 at p. 37. Plaintiff was transferred to another reentry center in Tacoma, WA on January 15, 2009. On June 5, 2009,

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 3

Plaintiff was released from BOP custody before his initially projected release date of July 13, 2009. *Id*. at p. 12.

Federal Defendants requested reconsideration of the Court's November 1, 2012 Order (Dkt. # 91) dismissing all but Plaintiff's procedural due process claim against them. Pursuant to Local Civil Rule 7(h)(3), the Court directed Plaintiff to respond to the federal Defendants' argument that  they are protected under the doctrine of qualified immunity.

## II. DISCUSSION

"Motions for reconsideration are disfavored." Local Rule CR 7(h)(1). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id*.

Individual federal Defendants contend that the Court's ruling that Plaintiff states a procedural due process claim because he was transferred from PFH to FDC SeaTac prior to a disciplinary hearing constitutes manifest error. Dkt. # 92, p. 2. The government contends that (1) Plaintiff was not entitled to any due process; (2) convicted prisoners do not have a liberty interest in pre-disciplinary hearings; (3) BOP regulations do not create a liberty interest in such a hearing; and (4) even if, Plaintiff has a procedural due process right to a pre-disciplinary hearing, the individual Defendants are entitled to qualified immunity because such right was not clearly established. *Id*.

The government argues that because prisoners do not have a liberty interest in being housed in any particular BOP facility, Plaintiff was not entitled to any due process. The government cites numerous cases holding that prisoners' due process rights are not violated

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 4

when they are transferred to other disciplinary units. *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) (administrative segregation); *Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000) (special housing unit); *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997) (disciplinary segregation unit); *Lynch-Bey v. Bolden*, 44 F. App'x 696 (6th Cir. 2002) (administrative segregation); *Orwat v. Maloney*, 360 F. Supp. 2d 146 (D. Mass. 2005) (segregation unit). This case, however, is not about an internal transfer within a prison; instead, this case is about a transfer from a drug treatment/work release program back to prison.

Post *Sandin*, only an "atypical and significant hardship" in relation to the ordinary incidents of prison life gives rises to a liberty interest protected by the due process clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) (a prisoner possesses a liberty interest under the due process clause when a change occurs in confinement that imposes an atypical and significant hardship in relation to the ordinary incidents of prison life). The threshold question therefore is whether removal from PFH imposed an "atypical and significant hardship" implicating a liberty interest.

The Ninth Circuit has not specifically held that termination of participation in a work release or reentry program constitutes an "atypical and significant hardship." However, other Circuits have held that inmates continued participation in work release programs implicates a liberty interest protected by due process. *Harper v. Young*, 64 F.3d 563, 565 (10th Cir. 1995) *aff'd*, 520 U.S. 143 (1997); *Edwards v. Lockhart*, 908 F.2d 299 (8th Cir. 1990); *Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999); *Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000); *Anderson v. Recore*, 446 F.3d 324 (2d Cir. 2006). Here, Plaintiff's continued participation at PFH was terminated prior to a hearing. While the Court agrees with Defendants that the failure

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 5

1   to follow a BOP regulation does not alone create a protected liberty interest, the punitive

2   termination may implicate a liberty interest that warrants application of procedural protections.

3          The Court cannot say, however, that such a right was clearly established under the law of

4   this circuit, and accordingly Defendants are entitled to qualified immunity. To determine whether

5   a right was clearly established the inquiry "must be undertaken in light of the specific context of

6   the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151,

7   150 L.Ed.2d 272 (2001). The individual circumstances of the case do not provide a basis for

8   qualified immunity if "the unlawfulness was apparent in light of preexisting law." *Jensen v. City*

9   *of Oxnard,* 145 F.3d 1078, 1085 (9th Cir. 1998) (internal citation omitted). "Although earlier

10  cases involving 'fundamentally similar' facts can provide especially strong support for a

11  conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v.*

12  *Pelzer,* 536 U.S. 730, 741(2002). The Supreme Court has made clear that "officials can still be

13  on notice that their conduct violates established law even in novel factual circumstances." *Id.*

14  Therefore, the question is "whether the state of the law" in 2008 gave Defendants a "fair

15  warning" that Plaintiff's pre-hearing transfer was unconstitutional. *Id.*

16         The Court directed Plaintiff to respond to the Government's qualified immunity

17  argument. Plaintiff timely filed a response but cited no relevant authority addressing the narrow

18  issue of whether the law was clearly established in 2008. Although the Ninth Circuit has not

19  foreclosed that termination of a reentry or drug rehabilitation program may result in an atypical

20  hardship, the contours of whether such termination requires procedural due process protections

21  cannot be said to be clearly established.  Thus, the Court cannot hold Defendants liable for

22

23

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 6

failing to provide a pre-termination hearing pursuant to BOP regulations during Plaintiff's transfer from PFH back to prison.

### III. CONCLUSION

Having reviewed the motion, the response and reply thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants' motion for reconsideration (Dkt. # 92) is GRANTED;

(2)  The Court vacates its finding in section III(B)(a) of its prior Order (Dkt. # 91);

(3)  All pending motions (Dkt. ## 98, 99, 108) are stricken as MOOT;

(4)  The Clerk is directed to close the case and enter judgment in favor of all Defendants.

DATED this 1 day of April 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION - 7